17 F.3d 1436
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James A. HENDRICKS, Petitioner-Appellant,
v.
Earl HINDMAN, Director, Shawnee County Adult Detention
Division of Shawnee County, Kansas; Attorney
General of Kansas, Respondents-Appellees.
 No. 93-3255.
 United States Court of Appeals, Tenth Circuit.
 March 9, 1994.
 
 ORDER AND JUDGMENT[1]
 Before LOGAN, SETH and BARRETT, Circuit Judges.
 James A. Hendricks, having been granted leave to proceed in forma pauperis, appeals the district court's dismissal of his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. 2254. We exercise jurisdiction under 28 U.S.C. 2253.
 Hendricks was incarcerated in the Shawnee County Jail, Topeka, Kansas following his arrest on May 2, 1991 on a fugitive warrant from the State of Mississippi where he had been indicted for capital murder. Hendricks was served with a Kansas warrant for Fugitive from Justice pursuant to K.S.A. 22-2715 in the Shawnee County jail on May 6, 1991.
 
 
 1
 On August 1, 1991, ninety-one days following his arrest, the Kansas case based on the fugitive warrant was dismissed and subsequently refiled before Hendricks was released from the facility. Later that day, Hendricks filed a petition for a writ of habeas corpus.
 
 
 2
 The next morning, August 2, 1991, the state court heard arguments on the petition and then took a recess to review the applicable law. During the court's recess, a governor's warrant for Hendricks arrived. When informed of the warrant, the court ruled that any failure to release Hendricks within the ninety-day limitation under Kansas law had been mooted by the filing of the governor's warrant. Hendricks was then placed into custody based on the governor's warrant.
 
 
 3
 Thereafter, Hendricks filed an additional petition for a writ of habeas corpus, which (1) incorporated the previous writ in order to raise the question of whether a remedy existed for his alleged two-day illegal detention beyond the statutory ninety-day period, and (2) attacked the validity of the governor's warrant, and the underlying extradition documents, including the indictment. Following the hearing on the second petition, the state court upheld the prior mootness decision and further held that the indictment was in the proper form and that there was compliance with the prerequisites to the governor's warrant.
 
 
 4
 Following exhaustion of his state appeals, Hendricks filed a petition for federal habeas corpus relief, which was denied. This appeal followed.
 
 
 5
 Hendricks phrases his two issues on appeal as: (1) whether an illegal detention may be exploited by the state in order to serve an extradition warrant, and (2) whether the district court erred in failing to grant Hendricks' petition for writ of habeas corpus because the supporting documents and the governor's warrant were insufficient.
 
 I.
 
 6
 Hendricks argues that the state improperly filed the second fugitive warrant to keep him incarcerated in order to facilitate service of the governor's warrant when it arrived. According to Hendricks, his remedy for the illegal detention of two days beyond the ninety-day limit allowed by Kansas law is immediate release.
 
 
 7
 Appellees argue that once the governor's warrant was served, any prior irregularities in the detention on the fugitive warrant were rendered moot. We agree.
 
 
 8
 The issue of whether the service of a governor's warrant has made any irregularities in Hendricks' detention on the fugitive warrant a moot issue is a question of law that we review de novo.
 
 
 9
 Section 22-2715 of the Kansas Uniform Criminal Extradition Act, provides:
 
 
 10
 If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged and ... that he has fled from justice, the judge or magistrate must, by a warrant reciting the accusation, commit him to the county jail for such a time not exceeding thirty days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused give bail ... or until he shall be legally discharged.
 
 Section 22-2717 provides:
 
 11
 If the accused is not arrested under warrant of the governor by the expiration of the time specified in the warrant or bond, a judge or magistrate may discharge him or may recommit him for a further period not to exceed sixty days, or a judge or magistrate may again take bail for his appearance and surrender ... but within a period not to exceed sixty days after the date of such new bond.
 
 
 12
 In In re Habeas Corpus Application of Sanders, 704 P.2d 386 (1985), the Kansas Court of Appeals held that prior irregularities were moot where the accused had been held for five days beyond the ninety-day limit before service of the governor's warrant. In that case, the petitioner had not filed his petition for a writ of habeas corpus until after he had been served with the governor's warrant. Id. at 387. Hendricks argues that Sanders should not apply because the timing of the filing of the habeas corpus petition is significant and distinguishes that case from his own. However, in Sanders, as here, the legal cause for detaining the petitioner arose before the final action in the habeas corpus proceeding.
 
 
 13
 For example, even assuming Hendricks would have been granted a writ of habeas corpus based on his initial detention, it is not inconceivable that he could have been walking down the jailhouse steps at the exact moment that the governor's warrant arrived. His arrest at the bottom of the steps would have resulted in a subsequent lawful detention based on the governor's warrant. As it happened, however, it was coincidental, though unfortunate for him, that the governor's warrant arrived during the recess of the habeas corpus proceeding and not a few hours later.
 
 
 14
 In In Commonwealth ex rel Coffman v. Aytch, 361 A.2d 652 (Pa.Super. Ct.1976), the governor's warrant was not produced until ten months after the fugitive detainer was lodged. The court in that case held that the lengthy illegal detention was not cured by production of the governor's warrant. Id. at 654. Denial of Coffman's petition for a writ of habeas corpus was reversed, and he was ordered discharged. Id. at 655.
 
 
 15
 In Miller v. Warden, 287 A.2d 57 (Md. Ct. Spec.App.1972), the defendant was confined in violation of the provisions of the Uniform Criminal Extradition Act for a period of about sixty days prior to the issuance of the extradition warrant. Id. at 61. The court in that case held that noncompliance with the Act was a moot question after the issuance of the extradition warrant and therefore the noncompliance did not adversely affect such warrant's validity. Id.
 
 
 16
 It is clear that at some point in time, an illegal detention beyond the ninety days set forth in the Uniform Criminal Extradition Act may not be rendered moot by the production of the governor's warrant and the Act may provide a remedy. However, in this instance, even assuming Hendricks was held illegally, a one or two day detention beyond the limit, does not cross that line. See Schumm v. Nelson, 659 P.2d 1389, 1390 n. 2 (Colo.1983)(noting that the ninety-day period commences not from the date of arrest but rather from the date the accused is first advised in court).
 
 
 17
 We hold that once the extradition warrant was issued, Hendricks continued detention was based upon the governor's warrant and not upon the fugitive warrant. Therefore, any issues which could be raised, including motivation for extending the prior detention, have become moot.
 
 II.
 
 18
 Hendricks claims that the grand jury indictment from Mississippi was defective. In the original indictment, the grand jury charged Mr. James A. "Hedricks" with capital murder committed during the commission of a robbery but failed to cite the applicable subsection of the capital murder statute. Hendricks claims that the indictment was improperly amended to correct the spelling of his name and to correct the subsection without reconvening the grand jury. Moreover, Hendricks claims that the attestation of the grand jury indictment was dated one day prior to the date of the grand jury foreman's signature.
 
 
 19
 Appellees argue that any changes made to the indictment were technical corrections to rectify simple spelling and typographical errors and any defects in the indictment were not substantive in nature. We agree.
 
 
 20
 Once a governor's warrant has been issued this "grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." Michigan v. Doran, 439 U.S. 282, 289 (1978). Therefore, the limited scope of judicial review becomes whether (1) the extradition documents are in order on their face, (2) the petitioner has been charged with a crime in the demanding state, (3) the petitioner is the person named in the extradition request, and (4) the petitioner demanded is a fugitive. Id.; Gee v. State of Kansas, 912 F.2d 414, 416-17 (10th Cir.1990)
 
 
 21
 For purposes of reviewing a state court decision on a petition for a habeas corpus writ, the factual findings of the state court "shall be presumed to be correct" unless not fairly supported by the record." Lafferty v. Cook, 949 F.2d 1546, 1549 (10th Cir.1991), cert. denied --- U.S. ---- (1992); 28 U.S.C. 2254(d).
 
 
 22
 The state court found that the supporting documents underlying the governor's warrant were sufficient on their face for the governor to issue the warrant. It found that the indictment charged Hendricks with capital murder, that Hendricks was a fugitive from justice, that Hendricks was the person named in the request for extradition, and that the governor's warrant in the proceeding was presumed valid.
 
 
 23
 We will not disturb the state court's findings. We AFFIRM.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. --- F.R.D. ----